TOLLIE CARTER,

    Plaintiff,

        v.

CHICAGO STATE UNIVERSITY, BIJESH
TOLIA & FARHAD SIMYAR,

    Defendants.

No. 07 C 4930
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tollie Carter, suffers from sleep apnea and works as an Associate Professor of

Accounting at Chicago State University. He brings various claims against Defendants alleging

that they failed to accommodate his disability, discriminated against him on the basis of race and

gender, and retaliated against him for participating in protected activities. Defendants now move

for summary judgment on all claims. For the following reasons, Defendants' motion for

summary judgment is granted in part.

## I. STATEMENT OF RELEVANT FACTS

### A. Overview

Plaintiff Tollie Carter ("Carter") is an Associate Professor of Accounting at Chicago State

University ("CSU"). Defendants Bijesh Tolia ("Tolia") and Farhad Simyar ("Simyar") are also

employees of CSU; Tolia served as the Chair of the Department of Accounting after January

2006, and at all relevant times, Simyar served as the Dean of CSU's College of Business.

CSU offers faculty the opportunity to teach summer school classes, and the Department

of Finance and Accounting offers such summer courses. Faculty members are only assigned to

teach summer courses if they make such a request. The availability of summer employment is contingent on factors such as the budget, program need, and the faculty member's placement on the department's rotation list. The rotation list is supposed to be a priority list that changes from year to year based on a previous year's course assignments, and program needs may supersede the rotation list. According to the Faculty Handbook, a faulty member must notify his or her department chair in writing by the date specified in the University Timetable of Personnel Actions. According to the University Timetable, for the 2005-2006 academic year, faculty were required to apply to their department chairs for Summer 2006 course assignments by September 15, 2005. Tolia scheduled faculty class assignments in the Department of Finance and Accounting, including summer class assignments. Tolia's recommendations were then made to Simyar.

B. Carter's Summer 2006 Request

On October 31, 2005, six weeks past CSU's due date, Carter submitted a request to Tolia asking that he be assigned two courses for the Summer 2006 term. Tolia was only able to assign Carter to one course for Summer 2006, and Carter protested this reduced assignment. In response to Carter's complaint that his assignment of one course was "totally unacceptable," Tolia explained that "[b]y the time I got your request, it was too late. This is all I have." Carter was assigned to one course for the Summer 2006 term.

Barbara Roper, an African-American female Accounting faculty member, received two course assignments as well as an advising assignment. Janet Grange, an African-American female Accounting faculty member, received one course assignment, as well as an assignment to serve as a UPI Officer.

2

<u>C. Fall 2006 and Spring Terms</u>

On February 8, 2006, Tolia sent Carter his tentative course assignments for the 2006-2007 academic year.  Tolia's email asked Carter to inform him of any concerns regarding the schedule "at [his] earliest."  According to these tentative assignments, Carter would teach the following courses during the Fall 2006 Term:

> Accounting 111 on Mondays and Wednesdays at 9:30-10:45 a.m.;
> Accounting 213 on Mondays and Wednesdays at 12:30-1:45 a.m.;
> Accounting 111 on Mondays at 6:00 - 8:50 p.m.;
> Accounting 212 on Wednesdays at 6:00 - 8:50 p.m.

During the Spring 2007 term, Carter was scheduled to teach the following courses:

> Accounting 111 on Tuesdays and Thursdays at 9:30 a.m. - 10:45 a.m.;
> Accounting 110 on Tuesdays and Thursdays at 11:00 a.m. - 12:15 p.m.;
> Accounting 213 on Thursdays at 6:00- 8:50 p.m.;
> Accounting 315 on Tuesdays at 6:00 - 8:50 p.m.

Accounting 213 is a class titled "Intermediate Accounting" and is a prerequisite for Accounting 315, "Advanced Accounting."  Carter regularly teaches Advanced Accounting.

On February 9, 2006, Carter told Tolia in an email that he "did not teach Accounting 213" and asked for two modifications.  Regarding the Fall 2006 schedule, he asked that his 12:30 class be changed to begin at 11:00 a.m.  Regarding the Spring 2007 schedule, Carter asked that the "night class for the Spring 2007 should be changed to Monday or Wednesday night" because "I have religious studies on Tuesday evenings."  In response, Tolia rescheduled Carter's Tuesday evening class to Wednesday night.  He did, however, require Carter to teach Accounting 213 because of "declining sections of all Accounting courses."  During these discussions with Tolia, Carter did not inform him that he suffered any health restriction that would prevent him from fulfilling any of his course assignments.

<u>1. Fall 2006</u>

On April 5, 2006, Carter received a Yearlong Faculty Work assignment form and signed this form "under protest."  Accompanying the form was a memo from Carter to Tolia.  The memo indicated that Carter was unhappy about being assigned to teach Accounting 213 and stated that he was "not qualified or interested in teaching Accounting 213."  This memo did not indicate that Carter had any health restrictions that would prevent him from teaching during the year.  Carter did not receive an amended Yearlong Faculty Work Assignment showing a change to his class schedule for the 2006-2007 academic year following the submission of his memo.

When the Fall 2006 semester commenced on Monday, August 21, 2006, Carter did not attend his Accounting 213 class scheduled for that day.  The next day, Tuesday, Tolia emailed Carter about his failure to teach his Accounting 213 class.  On Wednesday, August 23, 2006, Carter responded to Tolia and stated that he was "unaware [he] was still teaching this class."  He also stated that he was not feeling well, would not be able to meet his Accounting 213 class, and asked to have his sick leave charged for the missed time.  Tolia asked Carter to submit a doctor's excuse for his sick time.  Carter did not teach his Accounting 213 class scheduled for that day, though Carter taught his other morning and evening classes scheduled on that day.

On Monday, August 28, 2006, Carter emailed Tolia and stated that "due to illness, I will be unable to teach this class [Accounting 213].  I will make every effort to attend my other courses.  Sorry for any inconvenience this may cause."

On September 5, 2006, Dr. Linus Ema filled out a "Return to Work/School Verification" form for Carter.  This form stated that Carter had "a history of obstructive sleep apnea" and asked that Carter be allowed to have classes "spread out over more than 2 days."  The form also

indicated that Carter will have drowsiness and fatigue throughout the day. Carter did not provide CSU with any documentation of his obstructive sleep apnea before submitting Dr. Ema's note around September 5, 2006. Dr. Simyar taught Carter's Accounting 213 class at the beginning of the Fall 2006 semester, and following the submission of Dr. Ema's note, CSU hired a part-time instructor to teach Carter's Accounting 213 class. Carter did not teach Accounting 213 during the Fall 2006 semester.

CSU sanctioned Carter two days' pay ($736.69) for refusing to teach his Accounting 213 class on August 21 and August 28, 2006. Plaintiff alleges that in August 2006, he received a performance appraisal completed by Tolia, which rated him far below his actual performance

### 2. Spring 2007

Shortly before the start of the Spring 2007 semester, Carter received a new schedule which modified the schedule he had received in April of 2006 in two ways: (1) it moved Accounting 315 on Tuesdays from 6pm to 8:50 p.m. to Wednesdays during the same time slot; and (2) it added the Accounting 110 lab on Thursdays from 12:30 p.m. to 1:20 p.m.

On January 9, 2007, Carter asked Tolia to change his Spring 2007 course assignments, asking that his assigned Accounting 213 course be swapped with an Accounting 111 course assigned to another faculty member. Carter also requested that the Accounting 110-02 Lab be removed from his schedule, as it was never part of his Yearlong Assignment. The Accounting lab was taught Thursdays from 12:30 to 1:20 p.m. On January 16, 2007, Tolia responded that he could not change Carter's schedule to lower his workload. Carter's Spring 2007 course assignments were spread out over more than two days.

Carter called in sick and did not teach any classes on Thursdays between January 11, 2007 and April 5, 2007. Another instructor was paid to teach Carter's courses in his absence. On January 18, 2007 and February 5, 2007, Tolia wrote to Simyar and informed him of Carter's refusal to teach his Thursday classes. On February 26, 2007 Tolia asked Carter to provide a doctor's statement for his sick leave absences on Thursdays of the Spring 2007 semester. On March 6, 2007, Dr. Ema filled out another "Return to Work/School Verification" form for Carter. In an accompanying letter, Dr. Ema wrote: "Please allow [Carter] to have his classes spread out over more than 2 days & no more than 8 hours a day." Carter provided this form to CSU on March 12, 2007.

On April 10, 2007, Carter met with Tolia, Simyar, the CSU faculty union president, CSU's Assistant Vice-President for Academic Personnel and Contract Administration to discuss Carter's failure to teach his Thursday classes that semester. After this meeting, Carter resumed teaching his Thursday classes, with the exception of Accounting 213. Carter did not teach Accounting 213 during the Spring 2007 semester. CSU sanctioned Carter $12,495.00, the amount of salary he had been paid to the instructor hired to teach Carter's assigned Spring 2007 classes. Carter requested a hearing on this sanction, and that sanction has not been imposed.

D. Summer 2007

On September 14, 2006, Carter emailed Tolia and Simyar to request three course assignments during Summer 2007. Carter requested the following courses:

Session One:

Accounting 111 from 10:00 - 11:45 a.m.
Accounting 110 from 6:00 -9:30 p.m.

<u>Session Two</u>:

Accounting 111 from 6:00 -9:30 p.m.

Carter's request to teach three classes were equivalent to nine "credit unit equivalencies" ("CSE's"). The faculty contract in place at the time of Carter's request states that "[u]p to six credit units may be assigned to a teaching professional in summer school." During the summer of 2006, however, Roper was given two teaching assignments, and an advising position, that totaled eight CUEs. Roper was lower on the Rotation List than Carter for Summer 2007.

Carter was offered two classes for the summer 2007 term on October 17, 2006. Carter responded that he had asked for three, but Tolia replied that it was only possible to teach two, Accounting 110 and Accounting 111.

On April 9, 2007, CSU offered Carter an assignment of Accounting 110 and Accounting 111 during the Summer 2007 term. Carter asked that the Accounting 111 course be changed from the second session of the Summer 2007 term to the first session. Simyar approved this change, however, the course was cancelled two weeks later because of insufficient student enrollment.

### E. Carter's Protected Activities

In 2003, Carter filed a discrimination complaint with the EEOC. Then, on November 28, 2006 and December 8, 2006, Carter provided CSU with a written statement regarding an investigation into a complaint of racial discrimination made against Simyar. The allegation of racial discrimination was brought by Professor Ben Liu. Carter claims that Simyar held this involvement in the investigation against him in decisions made regarding his employment.

On January 31, 2007, Carter filed a charge of discrimination against CSU. Carter claims that CSU failed to accommodate him by giving him a schedule that allowed him to nap during the day.

### F. Other Relevant Facts

Carter was first diagnosed with sleep apnea in February 2003. Carter at times falls asleep during the day, at work, or while watching television. He also suffers hypertension, loss of energy and loud snoring. A sleep study conducted on October 12, 2006 recommended that he use a CPAP machine which assists Carter's breathing at night, though even with the use of this machine, Carter still wakes up often during the night. Because of his sleep apnea, Carter cannot teach after 6:00 p.m. without a three to four hour nap during the day. With a nap, Carter is able to teach after 6:00 p.m. Without a nap, Carter is only able to stay awake until about 6:30 p.m.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v.*

*Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. DISCUSSION

Defendants move for summary judgment on all claims. Count I alleges that CSU violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate Plaintiff's disability of sleep apnea by modifying his schedule during the 2006-2007 academic year. Counts II and III allege that he was discriminated against on the basis of race and gender when he was granted only part of his requests to teach summer school classes in 2006 and 2007. Count IV alleges that he was retaliated against for participating in protected activity such as filing two EEOC charges and participating in a University discrimination investigation.

### A. Count I: Failure to Accommodate In Violation of the ADA.

Carter claims that CSU failed to accommodate his sleep apnea during the 2006-2007 academic year by assigning him to teach an Accounting 213 class scheduled during the afternoon. To prevail on an ADA failure-to-accommodate theory, Carter must show that: (1) he is a qualified individual with a disability; (2) CSU was aware of his disability; and (3) CSU failed to reasonably accommodate the disability. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).

#### 1. Plaintiff 's Sleep Apnea Does Not Qualify As A Disability.

Defendants argue that Plaintiff is not a qualified individual with a disability. To be deemed 'disabled' for purposes of the ADA, a plaintiff must have a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102 (1). The term "substantially limits" means that a person is unable to perform, or is significantly restricted as to

the condition, manner or duration under which they can perform a major life activity, compared to an average person. 29 C.F.R. § 1630.2(j)(1(ii). Carter has explained that his sleep apnea results in fatigue, drowsiness, impaired vision, shortness of breath, irregular heartbeats, loss of concentration, panic attacks, and headaches. It appears that the major life activities Carter's sleep apnea affect are breathing, sleeping and working.

Carter, however, has put forth no evidence to show that his work is substantially limited in his major life activities. To be substantially limited in the major activity of working, the law requires that a plaintiff show that he is "unable to work in a broad class of jobs." *Harris v. Proviso Area for Exceptional Children*, 581 F.Supp.2d 942, 956 (N.D. Ill. 2008). Plaintiff has made no such showing here. As to breathing, Plaintiff states that he has trouble breathing during the day, but makes no specific claims as to how often this occurs, and what impact it has on his day to day activities. Inability to breathe at night is tied to Plaintiff's sleep apnea, and allegedly causes him to wake up frequently during the night.

With respect to sleeping, courts have held that "only prolonged, severe and long-term sleep difficulties can amount to a substantial limitation in [this] major life activity," *Burks v. Wis. Dep't Transp.*, 464 F.3d 744, 757 (7th Cir. 2006); courts recognize that sleep apnea can be so severe that it does impact the major life activity of sleep. *Silk v. City of Chicago*, 194 F.3d 788, 798-99 (7th Cir. 1999). It is undisputed that Carter suffers from sleep apnea, however, he has failed to present evidence sufficient to establish an issue of fact that his sleep apnea was so severe as to substantially limit his major life activity of sleep. Indeed, sleep apnea can vary in severity and the court must make an individual determination regarding the severity of the plaintiff's condition for purposes of summary judgment. *Kolecyck-Yap v. MCI Worldcom, Inc.*, No. 99 C 8414, 2001 WL 245531, *10 (N.D. Ill. March 12, 2001). In *Kolecyck-Yap*, the court

found that a plaintiff with sleep apnea was not substantially limited in her ability to sleep because she could not provide any evidence that her sleep apnea was sufficiently severe, including "facts . . . which reveal [Plaintiff's] oxygen saturation levels while she slept, her hypertension levels, nor how many hours [Plaintiff] slept during the night."  No. 99 C 8414, 2001 WL 245531, *10 (N.D. Ill. March 12, 2001).  Similarly, here, Plaintiff provides no such facts, and relies solely on his own testimony.  Moreover, Carter admits that he sleeps with the aid of a CPAP machine, and notes only that he still "awake[s] during the night and frequently experiences fatigue, drowsiness and panic attacks."  Without the machine, his sleep is more disturbed, but Plaintiff does not provide any details regarding this assertion.

Based on the record before me, I do not find that Plaintiff's sleep apnea substantially limits major life activities.  Defendants' motion for summary judgment is therefore granted as to count I.

### 2. Plaintiff Was Reasonably Accommodated

Even assuming that Plaintiff was disabled under the ADA, his failure to accommodate claim must be rejected because the University accommodated his alleged sleep apnea.  Pursuant to the ADA, an employer discriminates if it fails to make a reasonable accommodation to the known physical limitations of an otherwise qualified individual with a disability.  42 U.S.C. § 12112 (b)(5)(A).  Reasonable accommodations include job restructuring, modified work schedules, and other similar accommodation.  42 U.S.C. § 12103(9).

### a. Fall 2006 Teaching Schedule

In February and April 2006, Carter was informed of his teaching schedule, including his Accounting 213 class.  Although Carter objected to teaching Accounting 213, he did not inform CSU of any health limitation that would prevent him from fulfilling his course assignments prior

to the Fall 2006 semester commencing. Instead, Carter signed his work schedule under protest stating that he was not qualified to teach Accounting 213, and that he had no desire to teach that class. Carter's schedule was not modified prior to the start of the semester, and Tolia never indicated that Carter was relieved from his teaching responsibilities as to Accounting 213. Still, Carter did not teach Accounting 213 on the first day of the Fall 2006 semester. Only after the semester began did Carter provide a Doctor's note indicating that he suffered from sleep apnea (a condition he was diagnosed with in 2003), and instructing that Carter "have [his] classes spread out over more than two days." In accordance with the Doctor's instruction, Carter was relieved of teaching Accounting 213 in the fall.

### b. Spring 2007

In the Spring 2007 semester, Carter's course assignments were spread out over more than two days, pursuant to his Doctor's request. Again, Carter did not attend the first day of Accounting 213, and likewise, called in sick each Thursday of the week. The reason for this, provided in a Doctor's note submitted two months after the semester started, indicated that Carter needed his classes spread out over more than two days and could work no more than eight hours per day. First, Carter failed to submit such a note at any time prior to the start of the Spring semester. Likewise, after the submission of this note, Carter was not required to teach Accounting 213. Moreover, although Carter complains that his Spring 2007 schedule did not accommodate his needs because it required him to work for 4.5 continuous hours without a lunch break, such a work schedule did not violate his doctor's orders which required his schedule to be spread out over two days, and that he not work for more than 8 hours per day. Also, such a schedule allowed for a break between 1:20 p.m. and 6:00 p.m., a total of four hours and forty minutes. Again, Plaintiff fails to explain why such a break was insufficient to accommodate a

nap.   As such , Plaintiff cannot show that he suffered an adverse employment action regarding the scheduling of his Spring 2007 classes.

### B. Carter's Title VII Discrimination Claims Fail.

In count II, Carter also claims that CSU discriminated against him on the basis of gender and race with respect to the 2006 and 2007 Summer Sessions.  In count III, Carter claims that Tolia and Simyar discriminated against him because of his race with respect to the above-mentioned assignments.  Specifically, Carter contends that CSU violated his rights by granting him only one class in Summer 2006, and by granting him only two classes in Summer 2007.  These claims fail as a matter of law.

### 1. Carter's Summer 2006 Discrimination Claims

Title VII requires that a party complaining of discrete acts of discrimination file a charge of discrimination within 300 days of the act "or lose the ability to recover for it."  *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002); *see* 42 U.S.C. § 2000e-5)e)(1).  Though Carter argues that the clock should not run until he received his final contract from the Provost, he supports this assertion with no authority.  Here, Carter's claim regarding his Summer 2006 assignments began to accrue when he was notified in January 2006 that he would receive only one course.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (statute of limitations begins to run when an adverse employment decision is communicated to a plaintiff).  Carter filed a charge of discrimination on January 31, 2007, over one year later.  Accordingly, this claim is time barred.

Carter argues that his claim is timely under a recent amendment to Title VII, 42 U.S.C. 2000-e5(e)(3)(a) for the proposition that his "charge is timely because Carter was not affected by the application of the discriminatory decision" until he was compensated by CSU.  This

13

argument, however, has no merit. The purpose of 42 U.S.C. 2000e-5(e)(3)(a) is "with respect to discrimination in *compensation*. . . when a discriminatory *compensation decision* or other practice is adopted." Carter does not, however, allege that he was discriminated in the amount or manner in which he was compensated. As such, Carter's Summer 2006 claim is time barred.

### 2. Carter's Summer 2007 Claims

In regard to the Summer 2007 scheduling, Plaintiff complains that he was discriminated against because he was only awarded two summer assignments, and because his classes were spread over two summer sessions, rather than scheduled during the same session. In fact, Carter was not subject to an adverse employment action.

A plaintiff can prove discrimination under Title VII by using either the direct or the indirect method of proof. *Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). Here, Carter does not attempt to show discrimination using the direct method of proof. Under the indirect method, Carter must prove that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was meeting CSU's legitimate employment expectations; and (4) similarly situated employees not belonging to his protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to show a legitimate non-discriminatory reason for the adverse employment action. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006).

First, Carter did not suffer an adverse employment action. CSU faculty are contractually prohibited from receiving more than six credit units in summer school. Carter, in fact, received two course assignments, totaling six units, for the Summer of 2007, and he has failed to point to any Accounting and Finance professor who was treated more favorably. No professor received

more than two summer course assignments in 2007. Though Roper did receive eight credit units for her Summer 2006 session, in Summer 2007, the relevant period, her credit unit assignment did not exceed six units.

Even if Carter could make a *prima facie* case of race or gender discrimination, CSU has a legitimate, non-discriminatory reason for not granting him three summer classes: the undisputed faculty contract. When an employee can establish a *prima facie* case of discrimination, the "burden must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse action taken]. *McDonnell Douglas*, 411 U.S. at 802. To survive summary judgment, Carter must show that the faculty contract was simply a pretext for his discrimination, "that not even the employer believed the reasons it proffered for the [adverse action]." *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 485 (7th Cir. 2002). No such evidence exists here. Even considering Roper's eight credits in the Summer of 2006, this fact at most shows that on a prior occasion, one professor was permitted to exceed the six credit limit. This one instance does not indicate that CSU's contractual limitation was not generally followed, or that CSU only imposed the contractual limitation on Carter in a discriminatory manner.

Carter also claims that he was discriminated against because his classes were spread over two summer sessions, rather than scheduled during the same session. This claim is belied by the fact that Carter *asked* to teach during both sessions of the summer semester. Specifically, he asked to teach three course assignments during Summer 2007, Accounting 111 and Accounting 110 during the first session, and Accounting 111 in the second session. Carter was assigned to teach Accounting 110 during the first session, and Accounting 111 during the second session. "[N]ot everything that makes an employee unhappy is an actionable adverse actions. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the shoulder employee did

not like would form the basis of a discrimination suit." *Smart v. Ball State Univ.* 89 F.3d 437, 441 (7th Cir. 1996).

After being assigned to his summer courses, Carter then requested that Accounting 111 be changed to the first Summer 2007 term. Simyar approved this request. The course, however, was cancelled two weeks later because of insufficient enrollment. Carter implies that the course was cancelled because CSU maliciously failed to publicize the change, causing a lack of enrollment. The course existed in the registration system, however, and Carter has failed to show that any lack of publicity regarding the change was motivated by his race or gender.

Accordingly, Defendants' motion for summary judgment as to count II is granted.

C. Carter's § 1981 Claim Fails

Carter also advances a race discrimination claim under 42 U.S.C. § 1981 against Tolia and Simyar in connection with his 2006 and 2007 summer assignments. The same *prima facie* requirements to discrimination claims brought under Title VII are applied to claims made pursuant to § 1981. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007). Accordingly, any § 1981 claim based on his Summer 2007 assignment fails against these defendants for reasons identical to his Title VII claim against CSU.

Carter's § 1981 claim based on his Summer 2006 assignment is similarly without merit. Carter again employs the indirect method of proof which requires a showing that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was meeting CSU's legitimate employment expectations; and (4) similarly situated employees not belonging to his protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff has established a *prima facie* case, the burden shifts to the

defendant to show a legitimate non-discriminatory reason for the adverse employment action. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006).

Carter's grievances as to Summer 2006 fail because he cannot show that he was meeting CSU's legitimate expectations in connection with the Summer 2006 term: Carter admits that he turned in his request to teach summer classes nearly six weeks after it was due. Further, he cannot show that any faculty member outside of his protected class was treated more favorably because all the Accounting faculty who received a summer assignment in 2006 were African-American.

Accordingly, Defendants' motion for summary judgment as to count III is granted.

D. Count IV: Retaliation

Finally, Carter claims that CSU retaliated against him for engaging in various protected activities such as filing a charge of discrimination with the EEOC in 2003, giving oral and written statements to CSU officials who were conducting an investigation regarding an allegation of race discrimination made against Simyar by Professor Ben Liu on November 28, 2006 and December 8, 2006, and filing an EEOC charge on January 31, 2007. Specifically, Carter claims that CSU retaliated against him by: (1) refusing to reasonably accommodate his teaching schedule in; (2) refusing to schedule him for one or more summer teaching sessions; (3) giving him a "less than accurate performance appraisal" in April 2006; (4) scheduling his summer courses over both sessions in 2007; and (5) sanctioning him for calling in sick and failing to teach his scheduled classes in 2006-2007.

Carter's retaliation claim can survive summary judgment by means of either the direct or the indirect methods. *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir.2002). Under the direct method, Carter must establish a *prima facie* case by presenting direct

evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 714 (7th Cir.2004). A plaintiff proceeding according to the direct method of proof may rely on direct or circumstantial evidence. *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 720 (7th Cir.2005). "[D]irect evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (quoting *Eiland v. Trinity Hosp.,* 150 F.3d 747, 751 (7th Cir.1998)). Circumstantial evidence is evidence that allows a jury to infer intentional discrimination by the decisionmaker. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir.2003). Plaintiff may prevail under the direct method, therefore, by "'showing an admission of discrimination' or by 'constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" *Cole v. Ill.,* 562 F.3d 812, 815 (7th Cir.2009) (quoting *Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 771 (7th Cir. 2008)).

Under the indirect method, Plaintiff is required to show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to the employer's expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Vance,* 2011 WL 2162900, at *9; *Hill v. Potter,* 625 F.3d 998, 1001 (7th Cir.2010). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish a non-invidious reason for the action. *Vance,* 2011 WL 2162900, at *9. The burden then shifts back to the plaintiff to show that the defendant's reason was pretextual. *Vance,* 2011 WL 2162900, at *9. If a plaintiff cannot establish a prima facie case of retaliation, there is no need to reach the issue of pretext. *See Brummett v. Lee Enterprises, Inc.,* 284 F.3d 742, 744 (7th Cir. 2002).

Plaintiff argues that he can show retaliatory intent under both the direct and indirect methods of proof.  Though never addressing the elements required by either method, he points to several facts that he asserts show 'retaliatory intent.'  First, Carter asserts that in Spring 2007 CSU purposefully added a class to his schedule making it difficult or impossible to meet his schedule's requirements, and then sanctioned him for failing to adhere to his schedule.  Next, Plaintiff points to a statement made by Deborah Jefferson, the Assistant VP of Academic Personnel and Contract Administration, in a memorandum dated April 14, 2007, that Carter should be prohibited from teaching in the summer to allow him to concentrate on reducing and controlling his medical conditions.  Third, Carter states that CSU intentionally changed his Summer 2007 schedule to spread his courses over the two six-week sessions.  Finally, Carter points to a statement made by Simyar to Professor Saghafi in 2006 or 2007 that "his friend" (understood to be Carter) would be fired in two weeks.

### 1. Refusing to reasonably accommodate his teaching schedule

Regarding Carter's teaching schedules in Fall 2006 and Spring 2007, I have already found that CSU made reasonable accommodations given Carter's sleep apnea.  As explained *supra*, CSU abided by the Doctor's notes submitted by Carter.  Because Carter was reasonably accommodated in relation to his Fall 2006 and Spring 2007 schedules, his retaliation claims fail under both the direct and indirect methods because he is unable to show an adverse employment action.

### 2. Refusing to schedule Plaintiff for one or more summer teaching sessions.

As to the 2006 Summer scheduling, Plaintiff alleges that his assignment of only one class was in retaliation for engaging in protected activity.  Again, Plaintiff's claim fails under both the direct and indirect methods.  As to the direct method, Plaintiff has not shown that there is a

causal connection between his assignment to teach one summer session class on October 31, 2005 (officially assigned by the Provost on April 25, 2006), and the EEOC claim he filed in 2003. A plaintiff may establish causation "by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.,* 416 F.3d 540, 545, 546 (7th Cir.2005) (recognizing a causal connection between plaintiff's complaint and her termination just three days later). The Seventh Circuit has also established, however, that "[e]vidence of temporal proximity, ... standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 549 (7th Cir.2008). In this case, a term of years passed between the protected action and Plaintiff's adverse action. In *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390, 399 (7th Cir.1999), the Seventh Circuit found a four-month time gap too long to suggest causation. Notably, even less time between a protected activity and adverse connection may be insufficient. *See, e.g., Argyropoulos v. City of Alton,* 539 F.3d 724, 734 (7th Cir.2008) (seven-week interval between complaint and termination did not, by itself, establish causation).

Under the indirect method, his claim also fails because he cannot show that he was meeting his employer's expectations: he admits that he submitted his Summer 2006 request six weeks past the deadline. Moreover, even Carter could make a *prima facie* case of retaliation under the indirect method, CSU has a legitimate reason for not assigning him to his requested courses: his course requests were submitted six weeks late. Although Carter is correct that deadlines were not strictly adhered to, he has failed to provide evidence that any Professor who submitted his or her request six weeks late was granted their exact request.

3. Providing Plaintiff with a less than accurate performance appraisal

Plaintiff alleges that in August 2006, he received a performance appraisal completed by Tolia, which rated him far below his actual performance. Again, this allegation fails under the direct method because Plaintiff fails to show a causal connection between this allegation and the EEOC claim he filed in 2003. Under the indirect method, Plaintiff has pointed to no facts to show that he was fulfilling his CSU's expectations, nor that a similarly situated employee received different treatment.

4. Plaintiff was required to teach summer school over the course of an entire summer.

This claim fails under both the direct and indirect methods because Plaintiff cannot show that he suffered an adverse employment action. For the Summer 2007 term, Plaintiff in fact requested to teach in both summer sessions. Accordingly, he has failed to show that his assignment to one course during each session, spreading his course work over both sessions, was an adverse action.

5. Sanctioned for calling in sick after Defendant refused to reasonably accommodate him.

Plaintiff has been sanctioned twice by CSU. First, he was sanctioned for failing to show up to teach Accounting 213 in the Fall of 2006. Then, he was sanctioned for failing to teach Accounting 213 in Spring 2007.

CSU sanctioned Carter two days' pay ($736.69) for refusing to teach his Accounting 213 class on August 21 and August 28, 2006. The meeting regarding these sanctions took place on October 6, 2006. On October 30, 2006, the aforementioned sanction was imposed. Plaintiff's claim of retaliation here fails under the direct method because he cannot show causation between his 2003 EEOC complaint and this fine. Plaintiff also fails under the indirect method because he has pointed to no similarly situated employee who was treated more favorably than himself.

As to Carter's 2007 sanctions, the sanction was issued on June 21, 2007. Carter alleges that these sanctions were imposed in retaliation for his filing his EEOC complaint on January 31, 2007. Carter's sanctions were imposed approximately six months after Carter filed his EEOC complaint, too long to establish a causal connection based on proximal timing alone. *Filipovic,* 176 F.3d at 399. However, Carter also points to circumstantial evidence of discrimination to support his claim. For example he points to a letter from Jackson written on April 14, 2007 advising that Carter should be prohibited from teaching so that he can focus on controlling his illnesses. Similarly, he has presented evidence that Simyar told a fellow professor that Carter would be fired within a short period of time. Although it is unclear when this statement was made (in 2006 or 2007), these facts are sufficient to defeat Defendants' motion for summary judgment.

Accordingly, Defendants' motion for summary judgment is granted in part. Defendants' motion is denied as to Carter's retaliation claim regarding sanctions imposed regarding his failure to teach Accounting 213 in Spring 2007.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is granted as to counts I, II and III. Defendant's motion is granted as to count IV in part. I deny summary judgment in count IV as to Plaintiff's claim that Defendants retaliated against him when they imposed his sanction in 2007.

ENTER:

James B. Zagel
United States District Judge

DATE: August 24, 2011

22